■ In the Matter of PAUL BERGER et al., Appellants, v NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, Respondent. [27 NYS3d 588]—

In a proceeding pursuant to CPLR article 78 to review a determination of Thomas Merrill, Appeals Officer and General Counsel of the New York City Department of Health and Mental Hygiene, dated February 22, 2013, which denied the petitioners' administrative appeal seeking the disclosure of certain documents under the Freedom of Information Law (Public Officers Law § 84 *et seq.*), the petitioners appeal from a judgment of the Supreme Court, Queens County (Dufficy, J.), entered December 13, 2013, which denied the petition and dismissed the proceeding.

Ordered that the judgment is affirmed, with costs.

Section 11.03 of the New York City Health Code requires

that certain instances of "[d]iseases and conditions of public health interest" be reported to the New York City Department of Health and Mental Hygiene (hereinafter the Department) (*see* NY City Health Code [24 RCNY] § 11.03). Upon receiving a report under section 11.03, the Department may, among other things, conduct epidemiological and laboratory investigations to verify the diagnosis and ascertain the source or cause of the infection, identify additional cases and contacts, and implement public health measures to control the disease or condition (*see* NY City Health Code [24 RCNY] § 11.03 [e]). Included within the list of reportable diseases and conditions are infections of the herpes simplex virus (hereinafter HSV) in infants 60 days of age or younger (*see* NY City Health Code [24 RCNY] § 11.03 [a]).

In December 2012, the Department received a report that a newborn infant male had been found to be infected with the herpes simplex virus type 1 (hereinafter HSV-1) (*see* NY City Health Code [24 RCNY] § 11.03 [a]). After conducting an epidemiological investigation (*see* NY City Health Code [24 RCNY] § 11.03 [e]), the Department circulated an "alert" to various health care providers and laboratories. The alert indicated that over a 13-year period there had been 12 laboratory-confirmed instances in which newborn males had been infected with HSV-1 during a particular method of ritual Jewish circumcision. In the performance of that method, known as "metzitzah b'peh," the person performing the circumcision, known as a "mohel," makes direct oral contact with the circumcision wound (*see generally Central Rabbinical Congress of U.S. & Canada v New York City Dept. of Health & Mental Hygiene*, 763 F3d 183, 187 [2d Cir 2014]). According to the alert, the instance reported in December 2012 was consistent with transmission of the HSV-1 infection by mouth in that the herpes lesions were on the infant's penis, the HSV-1 virus is commonly found in the mouths of adults, and the infection was found within 10 days after circumcision. The alert also contained information and instructions for providers and laboratories for, among other things, the treatment of infant boys following circumcision and the reporting of HSV-1 detection in specimens from an infant.

After the alert was circulated, Paul Berger, a reporter at the Jewish Daily Forward (hereinafter the Forward), a newspaper serving the Jewish and Yiddish-speaking communities of New York City, filed a request with the Department pursuant to the Freedom of Information Law (hereinafter FOIL) (*see* Public Officers Law § 84 *et seq.*). In that request, Berger described the

record he sought: "the name of the mohel who infected an infant with HSV-1 during ritual circumcision in December 2012." After the Department denied his request, Berger filed an administrative appeal. The administrative appeal was denied on "multiple" grounds, one of which was that the information Berger requested was related to an individual's "medical condition," and that its release would thus, under Public Officers Law § 87 (2) (b), constitute an unwarranted invasion of personal privacy. Berger and the Forward (hereinafter together the petitioners) then sought review of the denial under CPLR article 78 (*see* Public Officers Law § 89 [4] [b]). The Supreme Court denied the petition and dismissed the proceeding.

FOIL "expresses this State's strong commitment to open government and public accountability and imposes a broad standard of disclosure upon the State and its agencies" (*Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562, 565 [1986]). To this end, FOIL provides that all records of a public agency are presumptively open to public inspection and copying unless otherwise specifically exempted (*see* Public Officers Law § 87 [2]; *Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d at 565; *Matter of New York Times Co. v New York State Dept. of Health*, 243 AD2d 157, 159 [1998]). FOIL expressly provides that an agency that has denied disclosure on the basis of an exemption "shall in all proceedings have the burden of proving entitlement" to the exemption (Public Officers Law § 89 [5] [e]). Thus, the standard of review on a CPLR article 78 proceeding challenging an agency's denial of a FOIL request is much more stringent than the lenient standard generally applicable to CPLR article 78 review of agency actions (*see Matter of New York Comm. for Occupational Safety & Health v Bloomberg*, 72 AD3d 153, 158 [2010]). A court is to presume that all records are open, and it must construe the statutory exemptions narrowly (*see Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d at 566; *Matter of Prall v New York City Dept. of Corr.*, 129 AD3d 734, 735 [2015]). The agency is required to "articulate a 'particularized and specific justification for denying access' " (*Matter of Dilworth v Westchester County Dept. of Correction*, 93 AD3d 722, 724 [2012], quoting *Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d at 566; *see Matter of Prall v New York City Dept. of Corr.*, 129 AD3d at 735-736). "Conclusory assertions that certain records fall within a statutory exemption are not sufficient; evidentiary support is needed" (*Matter of Dilworth v Westchester County Dept. of Correction*, 93 AD3d at 724; *see Matter of Baez v Brown*, 124 AD3d 881, 883 [2015]).

As the petitioners correctly contend, the Supreme Court applied the wrong standard in reviewing the Department's denial of Berger's administrative appeal (*see Matter of Data Tree, LLC v Romaine*, 9 NY3d 454, 462-463 [2007]). However, upon reviewing the denial under the correct standard, Berger's administrative appeal was properly denied. As relevant here, Public Officers Law § 87 (2) (b) expressly exempts from disclosure records that "if disclosed would constitute an unwarranted invasion of personal privacy" under Public Officers Law § 89 (2). Public Officers Law § 89 (2) (b) (i) expressly includes "medical . . . histories" within the ambit of "unwarranted invasion of personal privacy" (*Matter of Hanig v State of N.Y. Dept. of Motor Vehs.*, 79 NY2d 106, 110-111 [1992]). In turn, the Court of Appeals has held that "medical history" is " 'information that one would reasonably expect to be included as a relevant and material part of a proper medical history' " (*id.* at 111-112, quoting *Matter of Hanig v State of N.Y. Dept. of Motor Vehs.*, 168 AD2d 884, 884 [1990], *affd* 79 NY2d 106 [1992]).

Here, inherent in Berger's request for "the name of the mohel who infected an infant with HSV-1 during ritual circumcision in December 2012" is that the mohel is himself infected with, or a carrier of, the HSV-1 virus. Thus, the petitioners' argument that they are not requesting the mohel's "medical history," but only his name, is without merit. Inasmuch as that information is undeniably " 'information that one would reasonably expect to be included as a relevant and material part of [the mohel's] proper medical history' " (*Matter of Hanig v State of N.Y. Dept. of Motor Vehs.*, 79 NY2d at 111-112, quoting *Matter of Hanig v State of N.Y. Dept. of Motor Vehs.*, 168 AD2d at 884), it is "medical history" within the meaning of Public Officers Law § 89 (2) (b) (i). The conclusion is thus inescapable that disclosure of the record Berger sought would be an "unwarranted invasion of personal privacy" under Public Officers Law § 89 (2) (b) (i) and Public Officers Law § 87 (2) (b). In light of this determination, we do not consider the parties' remaining arguments regarding exemptions.

Finally, inasmuch as the petitioners have not "substantially prevailed" in this proceeding, they are not eligible for a discretionary award of an attorney's fee (*see* Public Officers Law § 89 [4] [c]; *Matter of Miller v New York State Div. of Human Rights*, 122 AD3d 431, 432 [2014]). Rivera, J.P., Balkin, Leventhal and Dickerson, JJ., concur.